WILLIAM CHEATHAM and others *vs.* LAURA HUFF and others.

### April Term, 1876.

INFANT FEME COVERT—FUNDS IN COURT.—If a wife who has funds in this court be not of full age, she is incapable of giving consent to its disposition, and the court will not take her examination, nor suffer her to waive her equity, but will either settle the fund on her or preserve it until she comes of age; and there is no authority for the payment of such money to her husband upon the ground that he could more profitably use it in trade, or for any other reason.

*Ed. Mulloy,* for petitioners.

THE CHANCELLOR:—In this cause there is a fund in court belonging to Laura Menefee, the wife of William Menefee, being her distributive share of her father's estate, and amounting to between $350 and $400. Laura Menefee is an infant about eighteen years of age. She and her husband joined in a petition to have these funds paid to them, not mentioning the infancy of the wife, and an order was made directing her privy examination to be taken as to

what disposition she desired to be made of the funds. Upon privy examination she expressed a wish that the funds should be paid directly to her; but the master, who acted as commissioner, very properly brought out the fact that she was only eighteen years of age. I was of opinion, on this state of facts, that no application could be entertained by the husband and wife for the payment of the money to either of them, which would in effect be paying it to the husband, but that an application of the wife by her next friend was necessary. Thereupon a petition in the name of the wife, by a solicitor of this court, as her next friend, and sworn to by him, was presented, stating the intermarriage of the petitioner with her husband in September, 1875, that they are poor, that the husband is a sober, industrious, and frugal man, engaged in the restaurant or coffee-stand business, at the market-house, and needs this fund in his business, and she asks that the fund be paid to him.

This application raises a question of grave importance, which comes before me for the first time, as to what disposition should be made by the court of funds under its control belonging to a married woman who is also an infant. I have taken advantage of the occasion to look into the subject, and arrive at conclusions based upon general principles, and which ought to control the action of the court, not merely in this case, but in all similar cases.

The provisions of statute law regulating the disposition of funds of an infant *feme* under the control of the court are embodied in the Code, §§ 4053, 4054.

Sec. 4053. " The proceeds of the real or personal property of an infant can only be paid to a guardian who has given bond, with good security, as such, to the satisfaction of the court."

Sec. 4054. " If the infant is also a *feme covert*, the funds can only be paid out upon the order of the court directing how and to whom the same shall be paid."

The latter section seems to recognize the rule that marriage terminates the usual guardianship (*Mendes* v. *Mendes,*

1 Ves. 91), and leaves to the court the duty of acting for the infant *feme*. This duty, while it may be said to rest in. the discretion of the court, is, like similar discretionary duties, regulated by settled rules and principles. The fundamental rule or principle thus settled by the decisions is, that the court will not act on, or even take the consent of, the infant wife; and this for the obvious reason that to do so would be to concede, what the law expressly denies, that an infant has capacity to dispose of property. The contrary was inadvertently held in *Gullin* v. *Gullin*, 7 Sim. 236, but the decision was reversed in *Stubbs* v. *Sargon*, 2 Beav. 496, and *Abraham* v. *Newcome*, 12 Sim. 566. The last of these cases was expressly recognized and followed by our supreme court in *Phillips* v. *Hassell*, 10 Humph. 197. " It has become the settled law of courts of equity," says Judge McKinney, in the case last cited, " that, standing *in loco parentis*, they will not suffer the husband to obtain possession of the wife's property without making a suitable provision for her and her children, unless she, being capable of giving consent, do voluntarily waive her right to a settlement, and agree that her property shall go to her husband. * * * But," he adds, " if the wife be not of full age, she is incapable of giving her consent; and, in such case, the court will not take the examination, nor suffer her to waive her equity."

In *Ex parte Higham*, 2 Ves. 579, where the application was to pay the fund to the husband " because he could make much more of it in the way of his trade as a trunk-maker" than by a settlement, and the wife, who had lately come of age, was in court, and very desirous that the fund should be paid the husband, Lord Hardwicke refused to pay it all out, saying that, although the husband might make money as he expected, he might also spend it. This precedent was followed by one of my predecessors, twenty years ago, and his action, upon appeal, was affirmed, although the wife persisted in desiring the money to be paid to the husband. The general rule is, however, that, if the

wife is of age and gives her consent, the court should not refuse to act in accordance with her wish. *Dimmock* v. *Atkinson*, 3 Bro. C. C. 195 ; *Willats* v. *Cay*, 2 Atk. 67 ; *Wright* v. *Rutter*, 2 Ves. jr. 677 ; *White* v. *Herrick*, L. R. 4 Ch. App. 345 ; *Postell* v. *Skirving*, 1 Desau. 158. In the last case the court, at the request of a wife who was of age, and being satisfied the husband was a gentleman of fortune in his own right, and that it was not requisite he should make a settlement on his wife, waived the settlement; but, in the same case, where another wife was under age, although the court entertained the same opinion of the husband as of the other gentleman, yet ordered a settlement.

It is clear, therefore, that I can neither take nor act upon the privy examination or wishes of the wife in this case. It is equally clear that if the next friend, or any relative of the wife, or even a stranger, asked for a settlement of this fund on the wife, suggesting reasons, the court might make it, and might do so on its own motion, if of opinion that it was proper. *Phillips* v. *Hassell*, 10 Humph. 197 ; *Postell* v. *Skirving*, 1 Desau. 158. There is no authority to sustain a payment of the money of an infant *feme* to the husband upon the ground that he could more profitably use it in trade, nor for any other reason.

There may be cases, undoubtedly, where the court would be authorized to trench upon the *corpus* of the estate of an infant *feme* for the benefit of the *feme* herself, as in the case of an unmarried infant. Applications of that character should be made by the father, brother, or nearest living relation of the *feme*, as next friend, and should be sustained by clear proof. In all other cases it is either the duty of the court to settle the fund on the infant *feme*, or, at any rate, preserve it intact for her until she comes of age.

The present application cannot be entertained. The fund must be loaned out on good security, at the best rate of interest that can be obtained, the interest to be paid, as it accrues, to the *feme*. If the husband is able to give the necessary security, there can be no objection to his borrowing the money.